IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MAROOF HAQUE | : |
| | : |
| Plaintiff | : CIVIL ACTION |
| | : |
| vs. | : |
| | : NO. 15-CV-1355 |
| SWARTHMORE COLLEGE | : |
| | : FILED UNDER SEAL |
| Defendant | : |

FILED
MAR 2 - 2017
KATE BARKMAN, Clerk
By_____ Dep. Clerk

### MEMORANDUM AND ORDER

JOYNER, J.                                        February 23, 2017

We write now in disposition of the Motion of Defendant, Swarthmore College, to Disqualify Raul Jauregui, Esquire, the attorney representing the Plaintiff, from continuing this representation, on the basis of two Rules of Professional Conduct governing the practice of attorneys before the Bar of this Court. For the reasons which follow, the Motion shall be granted and Mr. Jauregui shall be disqualified from any further involvement in this litigation.

### Factual Background

This case has its origins in an incident of alleged sexual assault which took place on the Swarthmore College campus on September 10, 2011. In his Third Amended Complaint, Plaintiff avers that despite the fact that he was the victim of the assault, nearly two years after its occurrence, he was accused of

being the perpetrator and was subject to an investigation and eventual prosecution before the College Judiciary Committee. At the conclusion of his disciplinary hearing, Plaintiff was subsequently found guilty of assaulting the female complainant and suspended from Swarthmore for an initial period of two years, which was the length of time that his accuser was to have remained on campus. Despite his suspension, Plaintiff apparently returned to the Swarthmore Campus in November 2013 to attend a party at which alcohol was unlawfully being served. At that time, another female student complained to one of the College's administrators that Plaintiff was on campus and, following a second disciplinary proceeding, Plaintiff was permanently expelled from the College. Plaintiff alleges that the College's handling and investigation of the charges against him and his eventual expulsion were discriminatorily motivated and unlawfully handled on the basis of his gender and his race in violation of, *inter alia*, Title VI and Section 1981 of the Civil Rights Act, 42 U.S.C. §§ 1981 and 2000d.

By the motion which is now before the Court, Swarthmore College contends that, inasmuch as Plaintiff's counsel had previously represented a female student with respect to filing a complaint against it with the United States Department of Education's Office for Civil Rights charging violations of Title IX during which he confidentially learned of certain details

2

involving the sexual assault in which Plaintiff was involved and which forms the basis of this case, he must be disqualified pursuant to Pa. R. P. C. Nos. 1.6 and 1.9. Plaintiff's counsel rejoins that he need not be disqualified because his former client herself did not maintain the confidentiality of the purportedly privileged information which she alleges he publicly revealed.

## Discussion

It is well-settled that the federal courts have the inherent authority to admit, suspend, disbar, or otherwise discipline a member of its bar for conduct unbecoming a member of the bar of the court. In re Mitchell, 901 F.2d 1179, 1182, 1183 (3d Cir. 1990)(citing, *inter alia*, In re Snyder, 472 U.S. 634, 643, 105 S. Ct. 2874, 2880, 86 L. Ed.2d 504 (1985)); In re Corn Derivatives Antitrust Litigation, 748 F.2d 157, 160 (3d Cir. 1984). It is likewise well established that an attorney owes a client the duties of loyalty and to advocate vigorously on that client's behalf and that "in litigation, an attorney may not abandon his client and take an adverse position in the same case." Corn Derivatives, 748 F.2d at 161. "This is not merely a matter of revealing or using the client's confidences and secrets, but of a duty of continuing loyalty to the client." Id.

At the outset, we observe that the conduct of counsel in this Court is governed by the Pennsylvania Rules of Professional

3

Conduct. See, Local Rule of Civil Procedure 83.6, Rule IV(B).[1] "The Pennsylvania Supreme Court has repeatedly observed that the attorney-client privilege 'is deeply rooted' in [Pennsylvania] common law," and that "at common law, an attorney owes a fiduciary duty to his client [which] demands undivided loyalty and prohibits the attorney from engaging in conflicts of interest... ." Dougherty v. Philadelphia Newspapers, LLC, 2014 PA Super 24, 85 A.3d 1082, 1086-1087 (Pa. Super. 2014)(quoting Levy v. Senate of Pennsylvania, 619 Pa. 586, 65 A.3d 361, 368-69 (Pa. 2013) and Maritrans v. Pepper Hamilton & Scheetz, 529 Pa. 241, 602 A.2d 1277, 1283 (Pa. 1992)). It is this same common law duty of confidentiality which is protected through Rule 1.9(a) of the Pennsylvania Rules of Professional Conduct and as noted, Defendant here moves to disqualify Plaintiff's counsel on

---

[1] Specifically, Local Rule 83.6, Rule IV is sub-titled "Standards for Professional Conduct" and reads as follows in relevant part:

**A.** For misconduct defined in these Rules, and for good cause shown, and after notice and opportunity to be heard, any attorney admitted to practice before this court may be disbarred, suspended from practice before this court, reprimanded or subjected to such other disciplinary action as the circumstances may warrant.

**B.** Acts or omissions by an attorney admitted to practice before this court, individually or in concert with any other person or persons, which violate the Rules of Professional Conduct adopted by this Court shall constitute misconduct and shall be grounds for discipline, whether or not the act or omission occurred in the course of any attorney-client relationship.

The Rules of Professional Conduct adopted by this court are the Rules of Professional Conduct adopted by the Supreme Court of Pennsylvania, as amended from time to time by that state court, except as otherwise provided by specific Rule of this Court after consideration of comments by representatives of bar associations within the state ...

4

the basis of Pa. R. P. C. Nos. 1.6 and 1.9.  Dougherty, 85 A.3d at 1087.  While a violation of the Pennsylvania Rules of Professional Conduct does not necessarily result in mandatory disqualification, disqualification is proper when the moving party clearly shows that continued representation would be impermissible. Billy v. Peiper, Civ. A. No. 1:11-CV-01577, 2013 U.S. Dist. LEXIS 114891 at *12 (M.D. Pa. July 18, 2013)(citing, *inter alia*, AgSaver LLC v. FMC Corp., No. 11-CV-997, 2011 U.S. Dist. LEXIS 2274178 at *3 (E.D. Pa. June 9, 2011)). "Although disqualification is a harsh measure and is generally disfavored by the court", "[n]evertheless doubts regarding the existence of an ethical rule violation should be construed in favor of disqualification." Id, (quoting Agsaver, supra, and Bell v. Lackawanna County, No. 08-CV-1926, 2011 U.S. Dist. LEXIS 61006 at *1 (M.D. Pa. June 7, 2011); James v. Teleflex, Inc., 1999 U.S. Dist. LEXIS 1961 at *3 (E.D. Pa. Feb. 24, 1999)).  Indeed, the Third Circuit has observed that plaintiffs do not have an absolute right to retain a particular counsel. United States v. Miller, 624 F.2d 1198, 1203 (3d Cir. 1980); Kramer v. Scientific Control Corp., 534 F.2d 1085, 1093 (3d Cir. 1976).

Specifically, Rule 1.9 provides:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent.

5

(b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client

> (1) whose interests are materially adverse to that person; and
>
> (2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter;
>
> Unless the former client gives informed consent.

(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

> (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or
>
> (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

"In determining whether a substantial relationship exists between the prior representation and the present matter under Rule 1.9(a), it is not enough that the two representations involve similar or related facts." Billy, 2013 U.S. Dist. LEXIS at *15. "Rather, the substantial relationship test is met 'when an attorney *might* have acquired confidential information as counsel in one matter which is also relevant to the other matter.' Id,(quoting ILA Local Union 1332 v. ILA, 909 F. Supp. 287, 291 (E.D. Pa. 1995)[citing Akerly v. Red Barn System, Inc., 551 F.2d 539, 544 n. 12 (3d Cir. 1977)])(emphasis in original).

6

Therefore, if "'in the course of the prior representation, the client *might* have disclosed to its attorney confidences which could be relevant or possibly detrimental to the former client in the present action,' the two matters are substantially related and an irrebutable presumption arises that compels attorney disqualification.'" Id, (quoting Delaware River Joint Toll Bridge Commission, Civ. A. No. 00-6415, 2001 U.S. Dist. LEXIS 13462, at *2 (E.D. Pa. Aug. 24, 2001)(emphasis in original).

Under Rule 1.6,

> (a) A lawyer shall not reveal information relating to representation of a client unless the client gives informed consent, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraphs (b) and (c).
>
> (b) A lawyer shall reveal such information if necessary to comply with the duties stated in Rule 3.3.
>
> (c) A lawyer shall reveal such information to the extent that the lawyer reasonably believes necessary:
>
>> (1) to prevent reasonably certain death or substantial bodily harm;
>>
>> (2) to prevent the client from committing a criminal act that the lawyer believes is likely to result in substantial injury to the financial interests or property of another;
>>
>> (3) to prevent, mitigate or rectify the consequences of a client's criminal or fraudulent act in the commission of which the lawyer's services are being or had been used; or
>>
>> (4) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim or disciplinary proceeding against the lawyer based upon conduct in which the

7

>client was involved, or to respond to allegations in any proceeding concerning the lawyer's representations of the client; or
>
>(5) to secure legal advice about the lawyer's compliance with these Rules; or
>
>(6) to effectuate the sale of a law practice consistent with Rule 1.17; or
>
>(7) to detect and resolve conflicts of interest from the lawyer's change of employment or from changes in the composition or ownership of a firm, but only if the revealed information would not compromise the attorney-client privilege or otherwise prejudice the client.
>
>(d) A lawyer shall make reasonable efforts to prevent the inadvertent or unauthorized disclosure of, or unauthorized access to, information relating to the representation of a client.
>
>(e) The duty not to reveal information relating to representation of a client continues after the client-lawyer relationship has terminated.

As outlined in Rule 1.6, clients are shielded by the so-called "attorney client privilege," which operates to protect against the disclosure of the confidential information which they provide to their counsel in the course of their representation and for the purpose of obtaining legal assistance. See, e.g., In re Grand Jury, 705 F.3d 133, 151 (3d Cir. 2012). "In order for the attorney-client privilege to attach to a communication, it must be (1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client." Pallares v. Kohn (In re Chevron Corp.), 650 F.3d 276, 289 (3d Cir. 2011)(quoting *inter*

8

*alia*, RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS §68). "[I]f persons other than the client, its attorney or their agents are present, the communication is not made in confidence and the privilege does not attach." Id.(quoting In re Teleglobe Communications Corp., 493 F.3d 345, 361 (3d Cir. 2007)).

The confidentiality rule applies not merely to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source. Dworkin v. General Motors Corp., 906 F. Supp. 273, 277 (E.D. Pa. 1995). To prove a violation of Rule 1.6, the attorney must be shown to have actually revealed information relating to the representation at issue. See, id.("In order to show that London violated Rule 1.6, however, GM must prove that London has actually revealed information relating to the representation of GM.").

On July 19 and August 25, 2016, this Court held hearings on the within Motion to Disqualify Plaintiff's Counsel at which we received documentary and testimonial evidence from Plaintiff's counsel's former client (hereafter "Client 1"). From that evidence, it appears that on April 28, 2013, Plaintiff's counsel, Mr. Jauregui, reached out to Client 1 via email and Facebook message after hearing that Client 1 had filed a Clery complaint[2].

---

[2] The Jeanne Clery Disclosure of Campus Security Policy and Crime Statistics Act, 20 U.S.C. §1092(f) requires all colleges and universities that participate in any federal financial aid programs to maintain records and disclose information about crime that occurs on or near their campuses.

9

Client 1 testified that Mr. Jauregui spoke with a friend of hers and through the friend offered to help Client 1, suggesting that she hire him. (N.T. 7/19/16, p. 8; Exhibits D-8, D-9). In response to that solicitation, Client 1 hired Mr. Jauregui to assist with the activism efforts she was undertaking to address sexual assaults on the Swarthmore College campus, as well as to represent her on her own internal campus complaint relative to a sexual assault which she experienced and possibly with the eventual filing of a civil lawsuit. Mr. Jauregui also represented Client 1 with regard to her filing a complaint with the Department of Education Office for Civil Rights ("OCR") and in the course of that representation, repeatedly encouraged Client 1 to get other victims of sexual assault to provide signed statements and to tell all the other sexual assault survivors to hire him. (N.T. 7/19/16, pp. 9-12). Part of the advice which Mr. Jauregui provided to Client 1 were ideas and strategies for activism regarding sexual assault issues on campus. (N.T. 7/19/16, p. 12).

Insofar as the complaint which was eventually filed with the Department of Education is concerned, that complaint included information and statements from some 12 individuals concerning sexual assaults which they experienced. (N.T. 7/19/16, pp. 13-

---

Compliance with the Act and its implementing regulations is monitored by the United States Department of Education. See, e.g., 34 C.F.R. §668.46.

14). Although Client 1 and one of her co-complainants felt it would be better to file the Complaint with the Department of Education's Office of Civil Rights on their own, Plaintiff's counsel had input into the phrasing of the alleged violations, formatting of the Complaint and strategies as to how to proceed further, such as whether the matter should go forward as a class action. The record also reflects that Plaintiff's counsel made numerous revisions to the Complaint prior to its filing. (N.T. 7/19/16, pp. 13-17). Additionally, Plaintiff's counsel represented a number of the other students whose stories were related in the OCR Complaint. (N.T. 7/19/16, p. 15).

There is also clear evidence in the record that Mr. Jauregui first learned of the incident for which he now represents Mr. Haque through his representation of Client 1, as the Jane Doe referenced in the Haque Complaints was one of the twelve students whose assault was referenced in the OCR Complaint filed by Client 1. On at least one occasion, Mr. Jauregui endeavored to have Client 1 set up a meeting between himself and Jane Doe, although Client 1's testimony does not support a conclusive finding that such a meeting ever took place. (7/19/16, pp. 15-16; Exhibit D-11). In the OCR Complaint, it was alleged that Mr. Haque assaulted Jane Doe, who was there identified as Complainant 7, and a number of other details of the aftermath and effects of the purported assault on Jane Doe were also set forth. (N.T.

11

7/19/16, pp. 16-25; Exhibit D-20). While the confidentiality of the information concerning the September, 2011 assault involving Mr. Haque and Jane Doe was obviously not maintained given the number of students who were privy to this information and the public filing of the OCR Complaint so as to warrant the finding of a Rule 1.6 violation, it is nevertheless clear that Plaintiff's counsel has taken a position in this action which is materially adverse to the position which he previously took in counseling and representing Client 1 and that he did so in large measure while utilizing information that he had come to know through his relationship with Client 1. In so doing, we find that Mr. Jauregui violated Pa. R. P. C. 1.9.

In addition, Plaintiff's counsel went on to use, disseminate and it appears misrepresent, confidential information obtained in his prior representation of Client 1 when he drafted the various complaints[3] in this action and made numerous allegations (most of which have since been stricken). Included among these averments are those that assert that Client 1: (1) was part of a radical "angry feminist cabal" at Swarthmore that goaded Jane Doe into improperly filing a disciplinary complaint against Plaintiff, (2)

---

[3] Plaintiff's pleadings were the subject of numerous motions to dismiss, several of which were granted because of Plaintiff's counsel's repeated failures to comply with a number of the Federal Rules of Civil Procedure and/or failure to state viable causes of action. Eventually, however, this Court found that portions of this case should be permitted to proceed past the pleading stage. In all, a total of four complaints were filed in this action - the Original Complaint, followed by a First, Second and Third Amended Complaints.

12

harassed the members of Plaintiff's fraternity on the basis of the race of most of its members, (3) violated the confidentiality of other students who had filed sexual assault complaints "because she simply thought it did not apply to her," (4) sought "the limelight of sexual assault activism, participating in conferences and speeches," and (5) was "the common link between the tragic sham-complaint brought against [Plaintiff] and against Student No. 13 by Student No. 12..." (Exhibits D-1, D-2, D-3, ¶s 103-120; N.T. 7/19/16, pp. 26-28). Client 1's unrebutted testimony is that not only was she offended by the tenor of these averments but she absolutely did not give Plaintiff's counsel consent to include any of the information she had imparted to him while he represented her in his pleadings in this case nor did he at any time ever advise or seek her consent to his representation of Mr. Haque. (N.T. 7/19/17, 28-29, 31-41). Client 1 further stated that she objects to Mr. Jauregui's representation of Mr. Haque in this matter. (N.T. 7/19/16, pp. 42-43). Thus Mr. Jauregui failed to obtain the requisite consent for public disclosure of confidential client information and took positions which were blatantly adverse to the interests of his former client in the filing of the pleadings in this matter and in representing this plaintiff. This evidence, we find, evinces such a clear and complete disregard by Plaintiff's counsel of both Rules 1.6 and 1.9 that his disqualification from proceeding

further in this case is obviously warranted.

An Order follows.